**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| IN RE: ) | Case No.        23-20064 (JJT) |
| ) | |
| ALBERT A. LINTON and ) | |
| ANDREA LINTON ) | Chapter        7 |
| ) | |
| Debtors. ) | Re: ECF Nos.      49, 64 |
| ) | |

**MEMORANUM OF DECISION AND RULING**
**ON UNITED STATES TRUSTEE'S MOTION TO DISMISS**

## I. INTRODUCTION

Before the Court is a Motion to Dismiss filed by the United States Trustee ("U.S. Trustee") in which he seeks to dismiss the Chapter 7 bankruptcy case of Albert Linton ("Mr. Linton") and Andrea Linton ("Mrs. Linton", together, the "Debtors") for abuse of the provisions of 11 U.S.C. (the "Bankruptcy Code") § 707(b)(2). (ECF No. 49, the "Motion"). The Motion arises out of a dispute surrounding the conversion of the Debtors' case from one under Chapter 13 to Chapter 7. The U.S. Trustee asserts that the Debtors' conversion from Chapter 13 to Chapter 7 relies on a substantial and improper postpetition decrease in the Debtors' gross monthly income. The U.S. Trustee urges that the Debtors must rely on their claimed gross monthly income as of the petition date, making their conversion presumptively abusive under Section 707(b)(2). For the reasons that follow, the U.S. Trustee's Motion is **DENIED**.

## II. JURISDICTION

The United States District Court for the District of Connecticut (the "District Court") has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C.

§ 157(a), (b)(1) and the General Order of Reference of the District Court dated September 21, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

**III.    PROCEDURAL HISTORY AND UNDISPUTED FACTS**

The facts in this case are undisputed. (*Compare* ECF No. 49 *with* ECF No. 64; *see also* ECF No. 68 at 0:50–1:42). The Debtors filed a voluntary petition (the "Petition") for relief under Chapter 13 on January 31, 2023 (the "Petition Date"). As part of the Petition, the Debtors filed their bankruptcy schedules and statements. (ECF No. 1; ECF No. 2). These statements disclosed that the Debtors are above median debtors. (ECF No. 1; ECF No. 2). These statements also disclosed a total average monthly income of $12,798.90. (ECF No. 2 at 2).

On February 13, 2023, the Debtors filed a Chapter 13 Plan ("Plan"). (ECF No. 10). On March 30, 2023, while the case was pending, but before the Plan was confirmed, one of the Debtors, Andrea Linton, retired from her second job as a Certified Nursing Assistant at Avery Heights Nursing Home. (ECF No. 64 at ¶ 5; *see also* ECF 73, Ex. A). Despite this reduction in income, the Debtors continued to make payments under the Plan during the pendency of their Chapter 13 case. (ECF No. 64 at ¶ 6; *see also* ECF No. 39). The Plan, advanced by the Debtors, was never confirmed.

On August 29, 2023, the Debtors instead successfully converted their case from a case under Chapter 13 to a case under Chapter 7. (ECF No. 28; ECF No. 29). As part of this conversion, the Debtors filed Amended Schedules D, EF, and I. (ECF No. 33). These revised statements disclosed a total current monthly income of only $11,455.99, which accounted for Mrs. Linton's $1,342.91 reduction in monthly income pursuant to her retirement from her second job. (ECF No. 33 at 16).

On November 24, 2023, the U.S. Trustee then timely filed the Motion, arguing that, for the purposes of Section 707(b)(2), the Debtors must rely on their income disclosures as of the Petition Date (pre-retirement), rather than the post-retirement income disclosed as part of their Chapter 7 filings. (ECF No. 49). In response, Debtor's Counsel filed her Objection to Motion to Dismiss Case for Abuse (the "Objection") on December 27, 2023, arguing that Mrs. Linton's retirement constitutes a special circumstance such that the case should not be dismissed. (ECF No. 64). In response, Debtors' Counsel has filed further amended schedules that properly referenced the Debtors' income on the Petition Date. (ECF No. 64; ECF No. 63).

A hearing on the Motion was held on January 11, 2024, (the "January 11, 2024 Hearing") in which both Debtors' Counsel and the U.S. Trustee participated. At the hearing, the U.S. Trustee acknowledged the "stressful and physical" nature of Mrs. Linton's work at Avery Heights Nursing Home, and that Mrs. Linton, at her age, "could not keep that level of work going anymore." (ECF No. 68 at 2:55–3:07). Unopposed, Debtors' Counsel represented that Mrs. Linton's retirement "wasn't voluntary; she just couldn't do both jobs anymore." (ECF No. 68 at 9:20–9:35). Importantly, the U.S. Trustee does not challenge that this "retirement" was proper in the context of Mrs. Linton's age and overall health. (ECF No. 68 at 2:20–3:10). Both parties here have conceded that the proper date to be used for calculating the Debtors' income was the Petition Date and that the presumption of abuse only arises here when the Debtors' income is to be assessed by that matrix. (ECF No. 68 at 8:43–9:34; *see also* ECF No. 64 at ¶ 12; ECF No. 63). The U.S. Trustee has acknowledged that, despite the fact that the U.S. Trustee does not challenge the bona fides of Mrs. Linton's retirement, he was required to raise this issue as part of his gatekeeper duties as U.S. Trustee. (ECF No. 68 at 6:09–6:41; ECF No. 68 at 10:42–10:48).

On March 13, 2024, at the direction of this Court, Mrs. Linton filed an Affidavit Pursuant to 28 U.S.C. § 1746 ("Affidavit") affirming the reasons and context of her retirement. (ECF No. 73). The Affidavit represented that Mrs. Linton had been working as a Certified Nursing Assistant at both Avery Heights Nursing Home and Woodlake at Tolland, and that she "was working approximately 16 hour [sic] days from Monday through Thursday and every other weekend at both locations." (ECF No. 73 at ¶ 5). These positions were "physically demanding." (ECF No. 73 at ¶ 5). The Affidavit also provides insight into Mrs. Linton's health, noting that she is 62 years old, has diabetes, high blood pressure, back pain, leg pain, and sciatica. (ECF No. 73 at ¶ 1, 6). Mrs. Linton therefore decided "to retire from Avery Heights [Nursing Home] because [she] was no longer able to work 16-hour days and keep up with the physical demands of two jobs." (ECF No. 73 at ¶ 8). The Affidavit also included a copy of Mrs. Linton's resignation letter, dated February 23, 2023, which notified Avery Heights Nursing Home that she would be leaving that position effective March 30, 2023. (ECF No. 73, Ex. A). There was no evidence in the record that Mrs. Linton's physical conditions were contrived or that he motivations were unreasonable.

### IV.    STANDARD OF REVIEW

In considering a motion to dismiss for abuse of the provisions of the Bankruptcy Code under Section 707(b)(1), the Court must first consider whether abuse is properly presumed under Section 707(b)(2), "a situation that is only present if the debtor is an above median income debtor." *In re Boule*, 415 B.R. 1, 3 (Bankr. D. Mass. 2009). Abuse is presumed under Section 707(b)(2)(A) if "the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of: (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $9,075, whichever is greater; or (II) $15,150." If abuse is presumed under Section 707(b)(2), then the Court is

empowered under Section 707(b)(1), on its own or by motion of any party in interest, to dismiss the case or, with the debtor's consent, convert it to a case under either Chapter 11 or 13. This measure is known as the "Means Test." *See, e.g.*, *In re McKay*, 557 B.R. 810, 815–16 (Bankr. W.D. Okla. 2016).

With respect to the relevant date for the Means Test calculation, the conversion of a case from one chapter to another "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." Bankruptcy Code § 348(a); *see also In re Erchenbrecher*, 85 B.R. 42, 44 (Bankr. N.D. Ohio 1988) ("[B]y the clear language of Section 348(a), the conversion relates back to the initial filing of the bankruptcy petition[,] *i.e.*, the commencement of the case, which, as provided in Section 541(a), is the date the property of the estate is determined"); *In re Sperry*, No. 22-20287 (JJT), 2023 WL 7311233 (Bankr. D. Conn. Nov. 6, 2023).

The presumption of abuse established under the Means Test may only be rebutted by "demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." Bankruptcy Code § 707(b)(2)(B)(i). "In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide[—] (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustments to income necessary and reasonable." Bankruptcy Code § 707(b)(2)(B)(ii).

Accordingly, the Court looks to the mechanical calculation of the Means Test to determine if there is a presumption of abuse that may warrant dismissal or conversion. As abuse

5

can be properly presumed under the Means Test here, the Court must then determine if the presumption has been rebutted by the demonstration of special circumstances.

V. **DISCUSSION**

It is undisputed that the Debtors are above median income debtors and that a presumption of abuse under Section 707(b)(2) does indeed arise if the Means Test is calculated based on the Debtors' income on the Petition Date. (*See* ECF No. 63; *see also* ECF No. 68 at 0:50–1:42, 8:43–9:34; ECF No. 64, ¶¶ 1–13). This was confirmed by both the U.S. Trustee and Debtors' Counsel, in their respective papers, and again at oral argument at the January 11, 2024 Hearing. (*See* ECF No. 49; ECF No. 64; *see also* ECF No. 68 at 0:50–1:42, 8:43–9:34). Accordingly, the only issue left to be determined by this Court is whether "special circumstances" have been demonstrated that sufficiently rebut the presumption of abuse.

Various expenses or reductions in income have been considered by courts in the context of the "special circumstance" provision of Section 707(b)(2)(B). "What constitutes a 'special circumstance' is by no means well settled." *In re Cotto*, 425 B.R. 72, 77 (Bankr. E.D.N.Y. 2010). Courts have acknowledged, however, at minimum, "whether special circumstances exist must be decided on a case-by-case basis." *In re Livingston*, Case No. 21-10879 (LSS), 2022 WL 951339, at *14 (Bankr. D. Del. Mar. 29, 2022); *see also In re Delbecq*, 368 B.R. 754, 758 (Bankr. S.D. Ind. 2007) (holding, in the context of a Chapter 13 case, that: "The Report[ of the Senate Judiciary Committee] strongly suggests to the [c]ourt that the term 'special circumstances' requires a fact-specific, case-by-case inquiry into whether the debtor has a 'meaningful ability' to pay his or her debts in light of an additional expense or adjustment to income not otherwise reflected in the means test calculation"); *In re Howell*, 477 B.R. 314 (Bankr. W.D.N.Y. 2012) (holding that nondischargeable student loans that resulted in only $40 of monthly disposable income constituted a special circumstance sufficient to rebut the presumption of abuse); *In re*

*Graham*, 363 B.R. 844, 851–52 (Bankr. S.D. Ohio 2007) (holding that additional costs of maintaining a separate household in the face of a long commuting distance was a special circumstance); *In re Scarafiotti*, 375 B.R. 618 (Bankr. D. Colo. 2007) (holding that additional expenses to live near a school appropriate for their child with special needs was a special circumstance); *but see In re Anderson*, 444 B.R. 505, 507–08 (Bankr. W.D.N.Y. 2011) (holding that the mere desire to retire did not constitute a special circumstance but noting that the debtor in that case "cited no medical or other reason why he cannot continue to work").

Here, Mrs. Linton provided a sworn affidavit that she has numerous health conditions and that her role as a Certified Nursing Assistant at Avery Heights Nursing Home was very physically demanding. Those assertions have been unopposed. The Court is struck not only by the demanding physical nature of her work, but also the extended duration of her workday. Furthermore, Mrs. Linton's Affidavit provided appropriate documentation of the adjustment to income, as well as a detailed and credible explanation sufficient to satisfy the requirements of Section 707(b)(2)(B)(ii). The Court notes the U.S. Trustee's recognition, on the record, of the stressful and physical nature of Mrs. Linton's work, as well as the fact that—due to the reasons mentioned—Mrs. Linton could no longer sustain the level of work required for both roles. The Court accordingly finds that the presumption of abuse has been rebutted as "special circumstances" of the Debtors' means have been sufficiently demonstrated.

## VI. CONCLUSION

Although abuse was presumed under the statutory Means Test, the Court finds that "special circumstances" have been demonstrated such that the presumption of abuse has been sufficiently rebutted. As a result, the U.S. Trustee's Motion is hereby **DENIED**.

**IT IS SO ORDERED** at Hartford, Connecticut this 20th day of March 2024.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut